491 So.2d 586 (1986)
MORTON F. PLANT HOSPITAL ASSOCIATION, INC., Appellant,
v.
STATE of Florida, Department of Health and Rehabilitative Services, and Psychiatric Hospitals of Florida, Inc., D/B/a Horizon Hospital, Appellees.
No. BJ-388.
District Court of Appeal of Florida, First District.
July 9, 1986.
*587 Alan C. Sundberg, Cynthia S. Tunnicliff and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for appellant.
Theodore E. Mack, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, for State of Fla.
Charles A. Stampelos of McFarlain, Bobo, Sternstein, Wiley & Cassedy, P.A., Tallahassee, for Psychiatric Hospitals of Florida, Inc., d/b/a Horizon Hosp., appellees.
NIMMONS, Judge.
This appeal is taken from an order of the Department of Health and Rehabilitative Services (HRS) denying appellant a Certificate of Need (CON) for a proposed short term psychiatric facility. Appellant primarily argues that HRS erroneously denied the CON based on cost of the proposed project although such cost does not relate to the cost of providing these services to the consumer. We find competent substantial evidence to support the denial of the certificate of need and affirm the order.
Appellant/Morton Plant filed an application for a certificate of need in November, 1982. Morton Plant proposed to build a 110 bed psychiatric facility. HRS issued a notice of intent to deny, and Morton Plant filed a petition for formal hearing. Two other psychiatric service providers, PIA Medfield, Inc., d/b/a Medfield Center, and Psychiatric Hospitals of Florida, Inc., d/b/a Horizon Hospital, intervened. At about that time, the legislature changed somewhat the rules for determining need in the CON process.[1] After informal discussions between Morton Plant and HRS, a "stipulation" was reached whereby Morton Plant would build a 64 bed psychiatric hospital, transferring 42 beds from its current facility and adding 22 new ones. The facility would also have other ancillary services including a day hospital and residential treatment center. The new proposed facility *588 would have the same square footage as the one originally proposed. HRS issued a notice of intent to grant the CON. Horizon and Medfield petitioned for formal hearings and Morton Plant was denied leave to withdraw its previously filed petition.
At the hearing, the intervenors contended that the project is not financially feasible, and that the project is not cost efficient with regard to construction costs and conversion of under-utilized beds. The hearing officer heard evidence on the proposed cost of the project, the cost to consumers of the services, the cost for similar services in the area, and the amount of space needed per patient to perform these services.
In her recommended order, the hearing officer found that Morton Plant is a not-for-profit hospital that has a policy of providing services to patients regardless of their ability to pay. Morton Plant is funded by a group of trustees which make up the largest charity in Pinellas County. The hearing officer found that the proposed project was financially feasible, although at a rate to patients of 6.4% higher than that proposed to be charged by Morton Plant. Even with an additional 6.4%, its rates would still be competitive in the area.
Morton Plant presented evidence of converting present space into psychiatric services, but based its estimates on the same square footage as the proposed new project. The hearing officer found that the proposed project offered over 1000 square feet per bed while the most that is generally needed to provide similar psychiatric services is 700 square feet per bed. She found that the cost per bed is far above that for similar services in the area. She concluded that Morton Plant had met all the applicable criteria for a CON except cost efficiency. She found that Morton Plant failed to demonstrate that the building was cost efficient in two respects: first, the expense of 1000 square feet per bed is excessive for the services rendered; and second, although Morton Plant introduced evidence on the cost of converting current space into psychiatric space for 64 beds at 1000 square feet per bed, it failed to introduce any evidence relating to converting current space into a more reasonable square footage per psychiatric bed, and therefore failed to show that converting present space into a psychiatric facility would not be more cost efficient. She recommended that the CON be denied. HRS adopted the recommended order.
On appeal, Morton Plant urges that HRS should not be allowed to prohibit Morton Plant from building a large, first class facility instead of a more inexpensive one if the cost of the facility is not reflected in an increase in medical costs to the consumers of these services. This is, in effect, a challenge to Section 381.494(6)(c)13., Florida Statutes (1983), and the administrative regulations related to it, which require HRS to consider the efficiency of construction costs in determining whether a CON should be issued. Section 381.494(6)(c)13. provides:
(c) The department shall determine the reviewability of applications and shall review applications for certificate-of-need determinations for health care facilities and services, hospices, and health maintenance organizations in context with the following criteria:
* * * * * *
13. The costs and methods of the proposed construction, including the costs and methods of energy provision and the availability of alternative, less costly, or more effective methods of construction.
A primary goal of the CON process is to contain the cost of medical care. See 42 U.S.C. Section 300k(a)(4) (1978); Farmworker Rights Organization, Inc. v. State of Florida, Department of Health and Rehabilitative Services, 430 So.2d 1 (Fla. 1st DCA 1983)(holding that Florida certificate of need law should be read in light of federal law). Cost containment may be reflected in many ways aside from the short term projections of costs for these services to the consumer. In the present case, for example, HRS ruled in effect that although there is a need for twenty-two new psychiatric beds, there is no need in the community for a lavish "Taj *589 Majal" to put them in.[2] Although Morton Plant demonstrated it has the ability to finance the project through its charity, it cannot be predicted what the impact of putting these unnecessary resources into a psychiatric facility will have on the cost of other medical care which might otherwise have received those resources. In addition, long range cost containment is an equally valid consideration. The consumer may be forced to pay the extra cost of this extravagant hospital if the charity is unable or unwilling to continue subsidizing it. Energy conservation is also emphasized in the above referenced statute. The cost and consumption of the extra energy necessary to operate this facility is a valid consideration. HRS was entitled to consider the cost of the proposed project and determine that it is higher than necessary for the services provided, even though HRS accepts the testimony that the services would be offered at a competitive rate.
Morton Plant also asserts that it adequately demonstrated that the cost of converting its current facilities into a project adequate to encompass the scope of the proposed project would be prohibitive.[3] As the hearing officer found, Morton Plant's cost estimates related to converting current facilities into unnecessary space. There was no testimony about converting current facilities to accommodate roughly 700 square feet per bed. Morton Plant did not meet its burden on this point.
Finally, Morton Plant argues that the hearing officer, and in turn HRS, erred in according inordinate weight to the cost efficiency criterion of Section 381.494(6)(c)13. In North Ridge General Hospital, Inc. v. NME Hospitals Inc., 478 So.2d 1138 (Fla. 1st DCA 1985), this Court stated:
[T]he legislative purpose behind the certificate of need law is to provide for a balanced consideration of all relevant criteria. [citations omitted] ... [T]he appropriate weight to be given to each individual criterion contained in the statute regarding CON applications is not fixed, but rather must vary on a case-by-case basis, depending on the facts in each case.
Id. at 1139.
Our review of the hearing officer's recommended order does not persuade us that the hearing officer failed to give the requisite balanced consideration of the relevant criteria.
AFFIRMED.
WENTWORTH, J., and DAVEY, KEVIN P., Associate Judge, concur.
NOTES
[1] Horizon has challenged HRS's determination of need under the changed criteria in a cross appeal here and in a separate related appeal. Since the CON was not granted, the finding of need is not material and is therefore not appealable by Horizon. We therefore dismiss the cross appeal.
[2] Counsel for Morton Plant used the term "Taj Majal" in oral argument, admitting that HRS may have authority to prohibit the building of extravagant structures regardless of projected cost to consumers, but denying that the proposed project was such an extravagant structure. Counsel thereby implicitly recognized that the statutory provision regarding cost containment is not strictly related to short term projections of costs to consumers.
[3] Rule 10-5.11(25)(e)(6), Florida Administrative Code (1984) requires that:

Development of new short term hospital inpatient psychiatric beds shall be through conversion of underutilized beds in other hospital services, unless conversion costs are prohibitive when compared with development of new facilities, or other factors to be specified by applicant to prohibit such conversion.